**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

MALCOLM WITHEROW, )
)
Petitioner, )
)
v. )                No.    1:19-CV-169-HSM-CHS
)
GRADY PERRY[1], Warden, )
)
Respondent. )

## MEMORANDUM OPINION

Petitioner Malcolm Witherow, a Tennessee inmate proceeding pro se, has filed a federal

habeas petition pursuant to 28 U.S.C. § 2254 challenging the legality of his confinement under a

Hamilton County judgment of conviction for first-degree premeditated murder.    Having

considered the submissions of the parties, the State-court record, and the law applicable to

Petitioner's claims, the Court finds that the petition should be denied.

## I.    SUMMARY OF EVIDENCE & PROCEDURAL HISTORY

Petitioner and his ex-girlfriend, the victim, were living with Connie Harrold on October

10, 2008 [Doc. 8-4 p. 12-13].    Also living there at the time was Tyler Baker, a friend of Ms.

Harrold's son [*Id.*].    On the morning of October 10, 2008, Petitioner returned to Ms. Harrold's

home after a night of drinking alcohol with a friend and drank coffee with the other occupants of

the home [Doc. 8-4 p. 14, 23-24; Doc. 8-6 p. 51-54].

At some point that morning, it began to rain, and the victim went outside to close the

windows of her vehicle [Doc. 8-4 p. 14].    Petitioner then apologized to Ms. Harrold for breaking

---

[1]  Petitioner is currently confined at the South Central Correctional Facility, where Grady
Perry is Warden.    Accordingly, the Clerk is **DIRECTED** to substitute Grady Perry as the proper
respondent in this case.    *See* Rule 2(a) of Rules Governing Section 2254 Proceedings in the United
States District Courts.

his promise to her, which Ms. Harrold later understood to mean his promise that he would never harm the victim in Ms. Harrold's home, and he followed the victim outside [*Id.*]. Ms. Harrold saw them fighting and heard a gunshot [*Id.* at 15]. The victim screamed for help, and Ms. Harrold saw Petitioner chasing the victim down the driveway [*Id.*]. Ms. Harrold yelled for Mr. Baker, who was taking a shower [*Id.* at 16]. He also heard gunshots [*Id.* at 44-45]. As Ms. Harrold ran toward the victim, Petitioner walked passed her on his way back toward the house [*Id.* at 16, 31]. Ms. Harrold found the victim on the side of the road and told Mr. Baker to call 911 [*Id.* at 16]. As Ms. Harrold performed CPR on the victim, the victim died [*Id.* at 17].

Without saying anything to anyone, Petitioner calmly got into his vehicle and left [*Id.* at 46]. He stopped for a sandwich and gas before driving to Moccasin Bend Mental Health Institute, where he reported shooting the victim and throwing the gun "in the river" [*Id.* at 95-96, 97; Doc. 8-6 p. 72-73]. Petitioner requested a mental health evaluation [Doc. 8-4 p. 96]. Petitioner received an evaluation but was not admitted to the hospital [*Id.* at 100-01]. He was arrested and subsequently indicted for first-degree murder [Doc. 8-1 p. 4-5]. The trial court ordered a mental health evaluation to determine his competency to stand trial and sanity at the time of the crime [*Id.* at 11-12].

According to Ms. Harrold and Mr. Baker, Petitioner had previously threatened to harm the victim because her past work as a confidential informant resulted in drug charges against Petitioner [Doc. 8-4 p. 19, 42-43]. Petitioner told Mr. Baker that he would "get away with it" and "do a year and a half" at "a crazy house" [*Id.* at 43-44].

The medical examiner determined that the victim had been shot six or seven times resulting in fourteen different gunshot wounds [*See, e.g.*, Doc. 8-5 p. 79, 81-85]. The victim was alive for each shot [*See id.* at 81].

Petitioner testified in his own defense at trial. He stated that he drank a quart of beer on the morning of the shooting [Doc. 8-6 p. 53]. He admitted to being angry with the victim for the drug charges but said that he "got over it" and denied killing the victim for revenge [*Id.* at 64-65]. He claimed that he could not remember shooting the victim [*Id.* at 66-67]. He remembered discussing a job interview with her, and then he remembered being at the mental health institution [*Id.* at 56-67]. According to Petitioner, he "was feeling like [he] was in a dream that whole morning" [*Id.* at 58]. At the conclusion of trial, a jury convicted Petitioner as charged, and he received the mandatory minimum sentence of life in prison [Doc. 8-1 at 41-42].

On direct appeal, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the judgment of the trial court. *State v. Witherow*, No. E2012-00131-CCA-R3-CD, 2013 WL 3353338, at *8-9 (Tenn. Crim. App. June 28, 2013) ("*Witherow I*"). Petitioner did not seek permission to appeal to the Tennessee Supreme Court.

Petitioner filed a pro se petition for post-conviction relief on October 21, 2013 [Doc. 8-13 p. 26-38]. With the assistance of appointed counsel, Petitioner filed an amended petition raising numerous claims of ineffective assistance of counsel [*Id.* at 42-44]. Following an evidentiary hearing, the post-conviction court denied relief [*Id.* at 48-79]. On appeal, the TCCA affirmed the denial of post-conviction relief, concluding that Petitioner failed to prove that he received the ineffective assistance of trial or appellate counsel. *Witherow v. State*, No. E2017-00512-CCA-R3-PC, 2018 WL 1378626, at *1 (Tenn. Crim. App. Mar. 19, 2018), *cert. denied* (July 18, 2018) ("*Witherow II*").

Petitioner filed the instant petition on or about May 16, 2019, raising the following grounds for relief, as paraphrased by Respondent:

Ground 1:     The evidence is legally insufficient to support the conviction.

Ground 2:      The trial court erred by not admitting the prior inconsistent statement of a witness as substantive evidence.

Ground 3:      The trial court erred by denying a mistrial for improper closing argument.

Ground 4:      Trial counsel provided ineffective assistance by:
   a.      Failing to present the testimony of a favorable defense witness,
   b.      Failing to adequately cross-examine a witness,
   c.      Failing to make an offer of proof for the prior inconsistent statement,
   d.      Inadequately presenting a defense of diminished capacity and intoxication, and
   e.      Failing to ensure that Petitioner was lucid during trial.

Ground 5:      Appellate counsel provided ineffective assistance by inadequately arguing the sufficiency of the evidence in the appellate brief on direct appeal.

Ground 6:      The State violated the Fourth Amendment by conducting an illegal search and seizure.

Ground 7:      The State violated Petitioner's rights to due process and a fair trial by presenting false testimony from one of its witnesses.

[Doc. 1].  On June 10, 2019, the Court ordered Respondent to file a response to the petition [Doc. 5].  Respondent complied by filing its answer on August 30, 2019 [Doc. 17], and Petitioner filed a reply to that response on or about September 30, 2019 [Doc. 18].  This matter is ripe for review.

## II.      LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

4

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id*. at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Moreover, this review is limited to the record before the State court when it adjudicated the federal claim. *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Additionally, when evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State-court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available State remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a State procedural rule, and that rule provides

an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the state's procedural rules, or that his trial counsel rendered ineffective assistance. *See id.* at 753. Additionally, the prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original). A fundamental miscarriage of justice of occurs only "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## III. DISCUSSION

### A. Sufficiency of Evidence

In his first claim for relief, Petitioner argues that the evidence against him was legally insufficient to support his conviction, because the State failed to prove the element of premeditation [Doc. 1 p. 14-15].

A challenge to the sufficiency of the evidence is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which allows a reviewing court to set aside a verdict on the basis of insufficient evidence only if, "after viewing the evidence in the light most favorable

to the prosecution," no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution and must defer to that resolution, because such a standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Because both the AEDPA and the *Jackson* standard apply to insufficiency claims, this Court's review is doubly deferential. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

Under Tennessee law, the "premeditated and intentional killing of another" is first-degree murder. Tenn. Code Ann. § 39-13-202(a)(1). An act is premeditated if it is "done after the exercise of reflection and judgment," but it is "not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time." Tenn. Code Ann. § 39-13-202(d). Whether the element of premeditation is met is a "question for the jury which may be established by proof of the circumstances surrounding the killing." *State v. Young*, 196 S.W.3d 85, 108 (Tenn. 2006). Facts relevant to the determination of whether a murder is premeditated include "declarations by the defendant of an intent to kill, evidence of procurement of a weapon, the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, infliction of multiple wounds, preparation before the killing for concealment of the crime, destruction or secretion of evidence of the murder, and calmness immediately after the killing." *State v. Jackson*, 173 S.W.3d 401, 409 (Tenn. 2005) (quoting *State v. Nichols*, 24 S.W.3d 297, 302 (Tenn. 2000)).

On direct appeal, the TCCA concluded that Petitioner's convictions were supported by sufficient evidence, noting:

> We conclude that there was overwhelming proof in this case upon which a rational trier of fact could have found the essential elements of first[-]degree murder beyond a reasonable doubt. A few months before the victim's death, Witherow promised

Harrold, a long[-]time friend, that he would not hurt the victim. When asked to explain the promise, Harrold said Witherow was angry because the victim had "worn a wire on him" which resulted in Witherow's arrest and subsequent indictment. Immediately before Witherow walked out of Harrold's home on the day of the offense, Witherow apologized to Harrold for breaking his promise. Minutes later, Harrold heard gunshots and saw Witherow chasing the victim down her driveway. Harrold heard the victim scream for help. She then observed Witherow standing over the victim's lifeless body. As Baker was going to assist the victim, he observed Witherow walk by him with a gun in his right hand. The victim was shot once in the chest, once in the throat, and four times in the back. Her body was riddled with a total of fourteen bullet wounds.

A shell casing and a trail of the victim's blood was found in the driveway of Harrold's home. The trail of blood led to the main road, approximately 100 feet away, where the victim's body was found. Gunshot residue was found on Witherow's seat belt and the victim's blood was found on his shoe. After fatally shooting the victim, Witherow drove to a mental hospital and told personnel that he had shot his girlfriend and had thrown the gun in the river. This is more than sufficient proof for a reasonable juror to conclude that Witherow committed the offense of first[-]degree murder.

*Witherow I*, 2013 WL 3353338, at *9.

As noted by the TCCA, Petitioner had made prior statements that he intended to harm the victim, he apologized to Ms. Harrold for breaking his promise immediately before he followed the unsuspecting victim outside and shot her repeatedly while chasing her into the road, he told Mr. Barker that he intended to "get away with it" by going to the "crazy house," and after he shot the victim, he calmly walked to his car and drove to a mental health institution. Therefore, the circumstances presented to the jury were sufficient for a rational juror to find beyond a reasonable doubt that the murder was premeditated. Accordingly, Petitioner has not demonstrated that the decision rejecting this claim is contrary to, or an unreasonable application of, the *Jackson* standard, or that it is based upon an unreasonable determination of facts in light of the evidence presented.[2]

---

[2] Petitioner also appears to argue that there was evidence that could have supported a verdict on a lesser-included offense [Doc. 1 p. 15]. However, it is the jury's province to weigh all of the evidence and render its verdict, and therefore, the existence of such evidence does not establish a right to relief under *Jackson*. *See, e.g., Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (noting

### B.    Prior Inconsistent Statement

In his second claim for relief, Petitioner argues that the "trial court's error of not allowing prior inconsistent recorded statements by a witness to be admitted as substantive evidence" under Tennessee Rule of Evidence 803(26) violated his constitutional rights to due process and a fair trial [Doc. 1 p. 14].

At trial, Petitioner sought to impeach Mr. Baker with a recording of his statement to police [Doc. 8-4 p. 66-82; Doc. 8-5 p. 62-69, 112-128, 151-57; Doc. 8-6 p. 8-11, 21-23]. The trial court eventually allowed Petitioner to introduce the recording but instructed the jury that the recording could only be considered for impeachment purposes and not as evidence of Petitioner's guilt or innocence [Doc. 8-6 p. 10-20]. Petitioner raised this issue on direct appeal [Doc. 8-9 p. 5]. The TCCA concluded that the trial court committed error by not admitting the prior inconsistent statement as substantive evidence under Rule 803(26), but it also determined that the error was not of a constitutional nature, and that the error of admitting the evidence for impeachment rather than substantive evidence was harmless given the evidence of Petitioner's guilt. *See Witherow I*, 2013 WL 3353338, at *9-12.

The Court finds this claim procedurally defaulted, because Petitioner failed to cite any federal authority in support of his claim when he presented it in State court [Doc. 8-9 p. 10-12]. The exhaustion of state remedies requires that petitioners "fairly present" their federal claims in state court. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."). Petitioner's failure to cite a constitutional basis in State court is confirmed by the TCCA's decision, which

---

under *Jackson*, court cannot "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury").

analyzed and denied Petitioner's claim solely under Tennessee law. *See Witherow I*, 2013 WL 3353338, at *9-12. Because Petitioner failed to alert the State court to the federal nature of his claim, he failed to exhaust his claim as a constitutional question, and it is now procedurally defaulted. *See, e.g., Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule). Therefore, his claim may be reviewed only if he can demonstrate cause and prejudice for the default, or that a fundamental miscarriage of justice would result from failure to review the claim.

Petitioner's jury was allowed to hear the recording and consider Mr. Baker's credibility in light of the video [Doc. 8-5 p. 156-57; Doc. 8-6 p. 12-20]. Additionally, even discounting Mr. Baker's testimony, there was sufficient evidence against Petitioner to sustain the jury's verdict. *See Witherow I*, 2013 WL 3353338, at *12. Therefore, the Court finds that Petitioner has not demonstrated either cause and prejudice, or that a fundamental miscarriage of justice would result from failure to review the claim.

Moreover, to the extent Petitioner seeks relief from the alleged error of State law, such a claim is not a cognizable ground for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding "federal habeas corpus relief does not lie for errors of state law") (citation omitted). Accordingly, this claim will be dismissed.

## C. Denial of Mistrial

Petitioner next argues that the trial court violated his right to due process by denying a mistrial based on an allegedly improper closing argument made by the prosecutor [Doc. 1 p. 14].

In Sate court, Petitioner claimed the prosecutor made prejudicial statements in closing argument [Doc. 8-9 p. 13]. The TCCA cited the relevant portion of the closing argument as follows:

> But this case, it's not only about the death of Melissa Hoover. But it's also about how we combat violence when violence occurs. You hear all kinds of stuff in our society today about people getting killed. Youth, adults, sergeants falling. All that.... So how do we combat violence? This is how we combat violence. Is when officers of the sheriff's office go out and begin investigating a case, and they collect blood evidence, they collect shell casings, they take witness statements, they take gunshot residue from a vehicle. And they send items to the TBI. There is an autopsy that occurs. And then after an investigation is completed we come into a court of law and we have a trial. But how we combat violent acts such as this is that we have the law and we have evidence. And when the State of Tennessee submits to you evidence beyond a reasonable doubt that a violent action occurred, that a young lady was killed intentionally and premeditatedly, then the law requires you as jurors to make a decision.
>
> So in order to combat acts like this, let's not turn our back or run away. But when you bring forth the evidence and you bring forth the law, that's what guides us, that's what dictates us[.]

*Witherow I,* 2013 WL 3353338, at *13-14. After reviewing the transcript of closing argument, the State court determined that "the prosecutor's comments did not constitute prosecutorial misconduct" and concluded that the "isolated references to 'sergeants falling' . . . did not affect the verdict to [Petitioner's] detriment." *Id.* at *14.

The relevant inquiry for this Court is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). In this case, the prosecutor's comments were far more benign than the prosecutorial comments in *Darden*, where the prosecutor's references to the defendant as an "animal" and statement that he "wished [he] could see [the defendant] . . . with no face, blown away by a shotgun" did not warrant federal habeas relief. *See id.* at 180 & n.11, 12. Therefore, the Court cannot conclude that the brief remarks made by the prosecutor in this case somehow rendered Petitioner's trial

fundamentally unfair.  Accordingly, Petitioner has failed to demonstrate that the decision rejecting this claim is contrary to, or involves an unreasonable application of, clearly established Supreme Court law, or that it is based on an unreasonable determination of facts in light of the evidence presented.

### D.      Ineffective Assistance of Counsel

Petitioner raises six claims of ineffective assistance of counsel [Doc. 1 p. 17-24].  These claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance.  *Strickland*, 466 U.S. 668 (1984). Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Id*. at 687-88.  A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight."  *Id*. at 689.  In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment.  *Id.*

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome.  *Id.* at 694.  However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment.  *Id.* at 691.

On habeas review, the issue for the district court is not whether the *Strickland* standard is met, but rather, whether the State-court's decision that *Strickland* was not met warrants relief under

AEDPA standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a State court, a petitioner "must demonstrate that it was necessarily unreasonable" for the State court to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

### 1. Trial Counsel's Performance

#### a. Failing to Present Testimony of Favorable Defense Witness

Petitioner argues that trial counsel rendered ineffective assistance by failing to present the testimony of Herman Pickleshimer, Jr., at his trial [Doc. 1 p. 6, 17-18].

At Petitioner's post-conviction hearing, Mr. Pickleshimer testified that he was removing the transmission from a truck on Ms. Harrold's property the morning of the murder [Doc. 8-14 p. 13]. He went inside Ms. Harrold's home at one point and saw the others inside [*Id*.]. He claimed that Petitioner was staying with him at his grandmother's house, and they were both there the night before [*Id*. at 12, 26]. Mr. Pickleshimer stated that Petitioner was staying with him rather than with Ms. Harrold because the victim would "push [Petitioner] around and stuff" [*Id*. at 12]. He claimed that when he and Petitioner first arrived at Ms. Harrold's, Petitioner "seemed to be all right," but that he was "kind of different" before the shooting [*Id*. at 14]. According to Mr. Pickleshimer, the victim was "angry about something" and was "hollering and pushing [Petitioner] and stuff" [*Id*. at 14-15]. Petitioner then began "pacing in a circle" on the porch, acting "nervous" and "disoriented" [*Id*. at 16].

Mr. Pickleshimer speculated that the victim was jealous of Petitioner [*Id*. at 18]. He saw the victim approach the trunk of her car and later heard the sound of gunfire, but he did not see the shooting [*Id*. at 19]. Mr. Pickleshimer stated that when the victim and Petitioner "started arguing

and fighting and stuff," he "just got in [his] car and left" [*Id*. at 12]. Mr. Pickleshimer testified that he had known Petitioner for over 12 years, and that Petitioner was not an angry or violent person [*Id*. at 18, 21]. He was not contacted by defense counsel prior to trial [*Id*. at 12].

Trial counsel testified that Petitioner's case was his first murder trial [*Id*. at 31]. He stated that the defense strategy was that Petitioner did not act with premeditation, and that Petitioner was opposed to a plea offer because, due to his age and the lengthy proposed sentence, he believed he would die in prison either way [*Id*. at 40]. Trial counsel stated he never had any indication that Mr. Pickleshimer was present at the crime scene and a potentially favorable defense witness [*Id*. at 67-68].

In State court, Petitioner argued that Mr. Pickleshimer was "a crucial eye witness who was present at the scene and who testified at the post-conviction hearing regarding Petitioner's state of mind immediately prior to the shooting as well as to the aggressive actions of the victim at the time, along with Petitioner's reputation for peacefulness, and who could have further established that Petitioner acted in the heat of passion under provocation so as to support a lesser included offense of voluntary manslaughter" [Doc. 8-18 p. 13].

The TCCA determined that neither Petitioner nor any other witnesses revealed during pre-trial investigations that Mr. Pickleshimer was present on the day of the murder. *Witherow II*, 2018 WL 1378626, at *15. Rather, the appellate court noted, the first time trial counsel learned of Mr. Pickleshimer's existence was during Petitioner's cross-examination at trial. *Id*. The court further reasoned that Petitioner was not prejudiced by the absence of Mr. Pickleshimer's testimony at trial, because his testimony did not appreciably bolster the defense theory. *Id*. It also noted that Mr. Pickleshimer's testimony conflicted with Petitioner's trial testimony. *Id*.

The record demonstrates that trial counsel conducted a pretrial investigation with the assistance of a private investigator [Doc. 8-14 p. 37]. Trial counsel interviewed the primary

witnesses, reviewed the discovery, and discussed the case with Petitioner [*Id*. at 37, 39, 41].

Nonetheless, Petitioner did not identify Mr. Pickleshimer as a witness, and no one else, including

the police, even knew Mr. Pickleshimer was an alleged witness [*Id*. at 67-68, 84-87]. Accordingly,

it was reasonable for the TCCA to conclude that trial counsel was not deficient for failing to

discover and present the testimony of a witness who trial counsel was unable to discover through

a reasonable investigation. *See Witherow II*, 2018 WL 1378626, at *15.

Additionally, as the post-conviction trial court insinuated, there were serious credibility

concerns with Mr. Pickleshimer's testimony, as no one, including Petitioner, said that Mr.

Pickleshimer was present on the morning of the crimes [Doc. 8-13 p. 74-76]. On the contrary, Ms.

Harrold, Mr. Baker, and Petitioner all testified at trial that they were the only individuals who were

present with Petitioner and the victim [Doc. 8-4 p. 13-14, 59-62; Doc. 8-6 p. 54-55]. Moreover,

Mr. Pickleshimer's testimony about where Petitioner lived and where he was the night before the

murder conflicted with Petitioner's own trial testimony [*Id*. at 47-55]. Accordingly, it was

reasonable for the TCCA to conclude that Petitioner was not prejudiced by trial counsel's failure

to discover Mr. Pickleshimer and offer his testimony at trial. *See Witherow II*, 2018 WL 1378626,

at *15.

Regardless, even accepting Mr. Pickleshimer's account as true, it is not likely that his

testimony would have altered the outcome of Petitioner's trial. Mr. Pickleshimer admitted that he

did not witnesses the shooting and testified only that Petitioner was not violent and that he was

behaving strangely right before he shot the victim [Doc. 8-14 p. 14, 16, 17-18, 20]. Therefore,

when Mr. Pickleshimer's testimony is considered in light of all of the evidence presented at trial,

it is reasonable to conclude that there does not exist a reasonable probability that the outcome of

the trial would have been different with his testimony. Accordingly, the decision rejecting this

claim was not contrary to, nor does it involve an unreasonable application of, *Strickland* and its

progress, nor was it based on an unreasonable determination of facts in light of the evidence presented.

### b.    Cross-Examination of Mr. Baker

Petitioner next claims that trial counsel provided ineffective assistance by failing to adequately cross-examine Mr. Baker at trial [Doc. 1 p. 6, 17-18]. The TCCA understood this claim to allege that trial counsel failed to ask Mr. Baker about Petitioner's demeanor, the time of the shooting, the victim's drug use, Mr. Baker's criminal record, and the timing of Petitioner's admission that he planned to use the "crazy house" as a defense to murdering the victim. *See Witherow II*, 2018 WL 1378626, at *15. The court determined that Petitioner failed to prove deficiency or prejudice because he did not offer proof to support his claims, and because the questions that trial counsel allegedly should have asked were immaterial. *Id*. at *16-17.

Mr. Baker did not testify at the evidentiary hearing. Therefore, without his testimony, Petitioner failed to present proof of how Mr. Baker would have responded to further questioning. Similarly, Petitioner failed to prove that Mr. Baker had a criminal record, or that the victim had drugs in her system when she was murdered. Given the lack of proof in the record, Petitioner has not demonstrated that counsel performed deficiently with regard to this issue. *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (finding that without evidence showing that a witness would have offered specific, favorable testimony, there can be no showing of prejudice from counsel's decision not to call that witness); *Stewart v. Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006) (finding where witness did not testify at post-conviction hearing, speculative nature of proposed witness testimony did not warrant federal habeas relief).

Moreover, as the Court has already discussed, the proof of premeditation was overwhelming, and Mr. Baker admitted at trial that he did not observe the shooting. While Petitioner emphasizes the possibility that further impeachment of Mr. Baker, there is no reason for

the Court to conclude that either Mr. Baker or Ms. Harrold had motive to lie about their testimonies at trial or their statements to police. Petitioner cannot demonstrate that he was prejudiced by trial counsel's cross-examination of Mr. Baker. Therefore, the Court concludes that the decision rejecting this claim was not contrary to, nor does it involve an unreasonable application of, *Strickland* and its progeny, nor was it based on an unreasonable determination of facts in light of the evidence presented.

### c.     Prior Inconsistent Statement

Petitioner also claims that trial counsel rendered ineffective assistance by failing to make an offer of proof regarding Mr. Baker's prior inconsistent statement to police [Doc. 1 p. 6, 19-20].

At trial, the court initially denied Petitioner's request to introduce Mr. Baker's statement [Doc. 8-4 p. 66-81]. It later revised its ruling and admitted it for impeachment purposes only [*See, e.g.,* Doc. 8-5 p. 156-57]. At that point, Mr. Baker's testimony was over, and he was no longer available to be recalled to the stand [*Id.* at 151]. On direct appeal, the TCCA noted that the recording itself was absent from the record but ultimately concluded that any error in the trial court's ruling was harmless. *Witherow I,* 2013 WL 3353338, at *10-12.

Petitioner alleges that trial counsel should have made an offer of proof when he first sought to admit the statement, so that both the recording of the statement and Mr. Baker's testimony in response to the recording were part of the record for appeal. However, the TCCA concluded that this claim, like the cross-examination claim, failed for lack of proof because Petitioner did not introduce the recording of Mr. Baker's statement or cross-examine Mr. Baker about the statement at the evidentiary hearing. *Witherow II*, 2018 WL 1378626, at *18-19. Therefore, Petitioner has not presented evidence to sustain his federal habeas claim. *See Tinsley*, 399 F.3d at 810; *Stewart*, 468 F.3d at 353.

Regardless, on direct appeal, the TCCA determined that the failure to admit the statement as substantive evidence was, at most, harmless. *Witherow I*, 2013 WL 3353338, at *10-12. Therefore, even if the record had been complete, the prior inconsistent statement was immaterial to the outcome of the trial in light of the overwhelming evidence of premeditation.

The TCCA's determinations are supported by the record and applicable law. Accordingly, the Court concludes that the decision rejecting this claim was not contrary to, nor does it involve an unreasonable application of, *Strickland* and its progeny, nor was it based on an unreasonable determination of facts in light of the evidence presented.

### d.    Diminished Capacity and Intoxication

Petitioner next claims that trial counsel provided ineffective assistance by inadequately presenting evidence of diminished capacity and voluntary intoxication [Doc. 1 p. 6, 19-20]. The TCCA rejected this claim on post-conviction review, as Petitioner failed to present additional evidence of diminished capacity or intoxication that trial counsel failed to utilize. *Witherow II*, 2018 WL 1378626, at *19-20. That court also noted that voluntary intoxication was presented to the jury as a defense. *Id.* at *20.

As with the preceding claims, Petitioner did not present any new evidence at the evidentiary hearing to support his defense theories and cannot demonstrate an entitlement to federal habeas relief. *See, e.g., Tinsley*, 399 F.3d at 810; *Stewart*, 468 F.3d at 353. Moreover, Petitioner received a mental health evaluation prior to trial, and trial counsel discussed Petitioner's mental health with him [Doc. 8-14 p. 32-36, 81-84, 99]. Therefore, it is reasonable to conclude that trial counsel explored a diminished capacity defense and found no basis to support that theory. Although Petitioner attempted to interject mental health into this case by driving to a mental institution immediately after shooting the victim, there is no evidence, other than Petitioner's own self-serving testimony, to support a diminished capacity defense.

Likewise, the trial court gave a jury instruction on voluntary intoxication, and trial counsel highlighted the proof of intoxication during closing argument [Doc. 8-6 p. 79; Doc. 8-14, p. 54-56, 87-88]. Therefore, the Court concludes that the decision rejecting this claim was not contrary to, nor does it involve an unreasonable application of, *Strickland* and its progeny, nor was it based on an unreasonable determination of facts in light of the evidence presented.

### e. Petitioner's Medication

Petitioner asserts that counsel provided ineffective assistance by failing to ensure that Petitioner was lucid at trial and not impaired by his medication [Doc. 1 p. 6, 18].

At the post-conviction evidentiary hearing, trial counsel could not recall whether Petitioner was taking medication at the time of trial [Doc. 8-14 p. 32-33]. Trial counsel did not notice any indication that Petitioner's medication was affecting him adversely, and he did not recall Petitioner complaining about his medication making him sleepy or otherwise affecting him [*Id.* at 63-64, 67].

The TCCA rejected this claim because Petitioner failed to present any proof that he was taking medication at trial or how the alleged medication would have affected him. *Witherow II*, 2018 WL 1378626, at *19. As with Petitioner's other claims, his failure to present proof to support his alleged impairment is dispositive, and the State court did not unreasonably apply *Strickland* by requiring him to meet his burden of proof. *See Tinsley*, 399 F.3d at 810; *Stewart*, 468 F.3d at 353.

Therefore, the Court concludes that the decision rejecting this claim was not contrary to, nor does it involve an unreasonable application of, *Strickland* and its progeny, nor was it based on an unreasonable determination of facts in light of the evidence presented.

### 2. Appellate Counsel

Petitioner claims that appellate counsel rendered ineffective assistance on direct appeal by inadequately briefing the sufficiency of the evidence issue [Doc. 1 p. 6, 17].

The Court notes that this issue was preserved and briefed by appellate counsel [Doc. 8-9 p. 14-15]. The evidence of Petitioner's identity and of premeditation were well-established by the record, and therefore, the sufficiency claim would not have succeeded on appeal regardless of additional legal briefing. Accordingly, the Court concludes that the decision rejecting this claim was not contrary to, nor does it involve an unreasonable application of, *Strickland* and its progeny, nor was it based on an unreasonable determination of facts in light of the evidence presented.

### E. Unconstitutional Search and Seizure

Petitioner claims that his Fourth Amendment rights were violated by an "illegal search and seizure" [Doc. 1 p. 16]. However, Petitioner did not exhaust a search and seizure claim in State court [*See* Doc. 8-9 p. 5; Doc. 8-13 p. 28-34, 42-43]. A claim must be presented to the TCCA in order to be exhausted under 28 U.S.C. § 2254(b). *See Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003); *see also* Tenn. S. Ct. R. 39 (establishing presentation of claim to TCCA is sufficient to exhaust state remedies). Therefore, by failing to pursue these claims to the TCCA, Petitioner failed to fully exhaust these claims. *See O'Sullivan*, 526 U.S. at 845 (holding that proper exhaustion requires petitioner to pursue claim through "one complete round of the State's established appellate review process"). Accordingly, these claims are technically exhausted but procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule). Petitioner has not argued that cause and prejudice exist to excuse the default. Therefore, Petitioner has not provided grounds to excuse the procedural default of these claims, and they must be dismissed.

Regardless, Fourth Amendment claims are not cognizable in federal habeas proceedings when the prisoner had a full and fair opportunity to litigate the issue in State court. *See Stone v.*

*Powell*, 428 U.S. 465, 494 (1976).  Here, Petitioner had the opportunity to litigate any Fourth Amendment issues by filing a pretrial suppression motion.  Therefore, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in State court, and this claim does not present a cognizable basis for federal habeas review.

### F.     False Testimony

Finally, Petitioner claims that the State presented false testimony in violation of his rights to due process and a fair trial [Doc. 1 p. 16].  However, Petitioner did not present the TCCA with a claim that the State offered false testimony at his trial [*See* Doc. 8-9 p. 5; Doc. 8-13 p. 28-34, 42-43].  A claim must be presented to the TCCA in order to be exhausted under 28 U.S.C. § 2254(b).  *See Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003); *see also* Tenn. S. Ct. R. 39 (establishing presentation of claim to TCCA is sufficient to exhaust state remedies).  Therefore, by failing to pursue these claims to the TCCA, Petitioner failed to fully exhaust these claims.  *See O'Sullivan*, 526 U.S. at 845.  Accordingly, these claims are technically exhausted but procedurally defaulted.  *See Jones*, 696 F.3d at 483; *see also* Tenn. Code Ann. § 40-30-102(a) and § 40-30-102(c).  Petitioner has not established that cause and prejudice exist to excuse the default, or that a fundamental miscarriage of justice would result from failure to review this claim. Therefore, Petitioner has not provided grounds to excuse the procedural default of these claims, and they must be dismissed.

## IV.   CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief.  28 U.S.C. § 2253(c)(1).  A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28

U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## V.        CONCLUSION

Petitioner has failed to demonstrate an entitlement to federal habeas relief. Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**


        */s/ Harry S. Mattice, Jr.*
        HARRY S. MATTICE, JR.
        UNITED STATES DISTRICT JUDGE